UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MALCOMB BUTLER,

        Plaintiff,

v.

DAVID SCHOLTEN et al.,

        Defendants.

_____/

Case No. 1:19-cv-449

Honorable Robert J. Jonker

OPINION

This is a civil rights action brought by a state prisoner. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Scholten, Lamb, Wilkinson, Russel, Burt, and Coleman for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff Malcomb Butler is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MDOC

employees at MCF: Drs. David Scholten and Unknown Coleman; Nurse Patricia Lamb; Health Unit Manager (HUM) Michael Wilkinson; Warden Sherry Burt; and Sergeant Unknown Payne. He also sues Grievance Manager Richard Russel,[1] who works at the MDOC's Office of Legal Affairs.

Plaintiff alleges he is "half blind" in his right eye and had a special medical accommodation to wear tinted eyeglasses. (Compl., ECF No. 1, PageID.8.) According to documents attached to the complaint, he had emergency surgery to relieve pressure in his eye caused by glaucoma. (Step II Grievance, ECF No. 1-1, PageID.26.) After the surgery, an optometrist prescribed tinted eyeglasses because Plaintiff's eyes were sensitive to light. (*Id.*) In 2016, prison medical staff gave Plaintiff a special accommodation to wear solar shields and tinted glasses. (MDOC Special Accommodations Orders, ECF No. 1-1, PageID.41.)

Plaintiff alleges that, in the fall of 2018, Sergeant Payne repeatedly "harassed" him by threatening to take away his tinted glasses whenever Plaintiff entered the chow hall. (Compl., PageID.8.) Plaintiff wrote kites to another officer about Payne's actions, and told Payne that he intended to complain to the warden as well. Payne allegedly told Plaintiff, "[Y]ou niggas stick together, but I will get you." (*Id.*)

Plaintiff wrote a letter to Warden Burt on October 1, 2018, complaining about Payne's conduct and expressing fear that Payne would send him to the "hole." (*Id.*) That same day, Sergeant Payne wrote a misconduct report on Plaintiff for disobeying a direct order. Payne alleged that he saw Plaintiff wearing "sunglasses" in the chow hall and asked Plaintiff to take them off. (*Id.*, PageID.11.) Plaintiff refused to do so because he had a medical detail for them. (*Id.*) According to the misconduct report, when Payne asked to see a copy of Plaintiff's medical detail,

---

[1] Russel's name is spelled "Russell" in the attachments to the complaint, but the Court will use the spelling adopted by Plaintiff in the body of the complaint.

2

Plaintiff told Payne that he did not have it with him. Payne repeated his order to remove the glasses and Plaintiff refused to comply. (Misconduct Report, ECF No. 1-1, PageID.43.)

Plaintiff defended himself against the misconduct by asserting that the report was false because Plaintiff was wearing prescription tinted eyeglasses, not sunglasses. In addition, Plaintiff contended that Payne was aware of Plaintiff's medical detail because he had seen it many times before. Nevertheless, on October 9, the hearing officer found Plaintiff guilty of disobeying a direct order. (Class II and III Misconduct Hr'g Report, ECF No. 1-1, PageID.45.) The hearing officer noted that Plaintiff "did not remove the sunglasses as requested, when he could not produce a detail. Prisoners are required to have any details or accommodations on t[heir] person at all time[s] and submit them to staff upon request." (*Id.*) The officer sanctioned Plaintiff with 10 days of loss of privileges.

On October 3, Plaintiff met with Dr. Scholten, an optometrist. At the meeting, Dr. Scholten allegedly told Plaintiff that the detail for tinted lenses was being discontinued "for no reason." (*Id.*, PageID.10.) Plaintiff complained about this issue in a prisoner grievance, claiming that his medical needs were being ignored. HUM Wilkinson responded to the grievance at Step I, noting that the optometrist determined that tinted lenses were "no longer medically indicated." (Step I Grievance Response, ECF No. 1-1, PageID.25.) Wilkinson also noted that Plaintiff still had an accommodation for solar shields, so his needs were not being ignored. (*Id.*) Consequently, Wilkinson denied the grievance.

Plaintiff appealed the grievance denial to Step II of the grievance process. Nurse Lamb responded to Plaintiff's Step II grievance appeal and affirmed the result below. Like Wilkinson, Lamb noted that "the electronic medical record and a visit of 10/3/2018 confirms that the optometrist determined that tinted lenses were not medically necessary for grievant at this time.

3

Grievant does have an approved detail for solar shields for outdoor use." (Grievance Step II Response, ECF No. 1-1, PageID.28.)

Plaintiff appealed that decision to Step III, claiming that Dr. Scholten never gave him a "real evaluation" of his symptoms; all he did was talk to Plaintiff. (ECF No. 1-1, PageID.29.) Defendant Russel denied the appeal at Step III because Plaintiff's "disagreement with the judgment of someone qualified and capable of making same does not support a claim for denial of care." (Step III Grievance Response, ECF No. 1-1, PageID.32.)

Plaintiff alleges that Dr. Scholten showed him a "falsified document" with Dr. Scholten and Defendant Payne's name on it. (Compl., PageID.14.) Plaintiff apparently sent a kite requesting a "document by Dr. Coleman re: stop date of tinted lenses." (*See* 10/5/2018 Kite Response, ECF No. 1-1, PageID.49.) A prison official responded that "[t]here is not a document from Dr. Coleman on tinted lenses. Follow the included release of information process if you would like a copy of your 10/3/2018 appt with Dr. Scholten." (*Id.*)

Based on the foregoing facts, Plaintiff claims that Defendant Payne retaliated against him for exercising his right to petition for redress under the First Amendment by writing a misconduct report. He also claims that Defendants Wilkinson, Lamb, and Russel deprived him of his right to due process when denying his grievance appeals. In addition, he claims that Defendants Payne, Coleman, and Scholten violated the ADA and the Rehabilitation Act, as well as Plaintiff's rights under the Eighth and Fourteenth Amendments, when they deprived Plaintiff of his medical detail for tinted glasses, and when they "discriminated" against Plaintiff. (Compl., PageID.17.)

As relief, Plaintiff seeks a declaratory judgment, an injunction requiring the MDOC to reinstate his medical detail for tinted glass, and compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## III. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

5

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Retaliation

Plaintiff claims that Defendant Payne retaliated against him by writing a "false" misconduct report after Plaintiff complained about Payne's conduct to the warden. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The Court finds that Plaintiff's complaint states a retaliation claim against Defendant Payne for writing the misconduct report.

### B. Due Process

Plaintiff argues that he was deprived of the right to due process because he did not receive "fair and unbiased treatment during [his] grievance appeal[.]" (Compl., PageID.12.) He also contends that Defendants Wilkinson, Lamb, and Russel authorized a "de facto policy" of "due process violations" for prisoners who file grievances. (*Id.*)

Plaintiff invokes the substantive protections of the due process clause, but those protections do not apply. "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a

6

claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

Plaintiff complains that the grievance review process was inadequate. A claim challenging the adequacy of grievance procedures is properly analyzed under the rubric of the *procedural* due process protections of the Fourteenth Amendment. Thus, Plaintiff's claim should be analyzed as one invoking his right to procedural due process under the Fourteenth Amendment, not under the more generalized notion of substantive due process.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff's procedural due process claim fails because he does not have a due process right to, or protected interest in, an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28,

7

1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in connection with that process did not deprive him of procedural due process. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

### C. Eighth Amendment

Plaintiff alleges that Dr. Scholten discontinued Plaintiff's medical accommodation for tinted lenses without reason, which implicates Plaintiff's rights under the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

8

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

9

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that a physician improperly stopped Plaintiff's accommodation for tinted lenses; however, Plaintiff does not allege that he faces a substantial risk of serious harm without access to tinted lenses. Plaintiff apparently received the lenses because his glaucoma causes sensitivity to light, but he does not allege facts indicating that he faces any harm, let alone a substantial risk of serious harm, without access to tinted lenses while indoors.

Furthermore, Plaintiff's claim essentially challenges a medical judgment about the amount of light that his eyes could tolerate, which is the sort of claim that sounds in tort law. Plaintiff does not allege that prison officials deprived him of care altogether. Indeed, they allowed him to have tinted lenses for several years after his surgery, and allowed him to have solar shields

10

to protect his eyes from outdoor sunlight. The facts alleged do not indicate that this care was so grossly inadequate that it shocks the conscience or amounts to no treatment at all. Thus, Plaintiff fails to state an Eighth Amendment claim.

### D. Verbal Harassment

Plaintiff suggests that Sergeant Payne verbally harassed Plaintiff on account of Plaintiff's race. Plaintiff asserts that Defendant Payne had been "racially profiling" Plaintiff and that Payne repeatedly threatened to take Plaintiff's eyeglasses. At one point, Payne allegedly told Plaintiff, "[Y]ou niggas stick together but I will get you." (Compl., PageID.8.)

Payne's comments lend some support to Plaintiff's retaliation claim, but they do not give rise to a claim on their own. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is

insufficient to support his claim under the Eighth Amendment."). Even the occasional use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff contends that Payne's conduct violated MDOC policy and the MDOC's employee handbook, which prohibit the use of "abusive, threatening or profane language or actions which either degrade or belittle another person or group." (Compl., PageID.9.) However, claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Nor does it provide redress for a violation of prison policy. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Thus, Payne's threats and comments do not give rise to a separate claim under § 1983.

### E. Supervisory Liability

Plaintiff faults Defendants Wilkinson, Burt, and Russel for "fail[ing] to act" to correct the misconduct of their "employee's/staff members." (Compl., PageID.12.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v.*

*Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Wilkinson, Burt, or Russel engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### IV. ADA / RA

Plaintiff also complains that Defendants Coleman, Scholten, and Payne "discriminated" against him under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, by charging him with a misconduct and failing to provide him with, or taking away, a special accommodation for tinted glasses. (Compl., PageID.17.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Put another away, "[t]o make out a prima facie case under the ADA, [Plaintiff] must establish that he has a disability; that he is otherwise qualified; and that he 'is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability.'" *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338,

13

344 (6th Cir. 2014) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)). Similarly, the RA protects "otherwise qualified individual[s] with a disability" from discrimination in specified programs and activities "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Plaintiff fails to state a claim under the ADA or the RA because he does not allege facts from which to reasonably infer that Defendants took action toward Plaintiff (e.g., by terminating his medical detail or charging him with a misconduct) because of a disability. Indeed, the crux of Plaintiff's claim against Drs. Scholten and Coleman is not that they acted against him because of his condition, but that they deprived him of a device that he needed to alleviate that condition. That is not a discrimination claim. *See Cannon v. Eleby*, No. 98-1546, 1999 WL 507006, at *1 (6th Cir. June 10, 1999) ("[M]ere allegations of inadequate medical care do not raise a viable discrimination claim."); *Bryant v. Madigan*, 83 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.").

Moreover, Plaintiff does not allege that the failure to provide him with tinted lenses caused him to be excluded from a service, program, or activity of the prison because of his disability. He claims that the failure to provide him with tinted lenses deprived him of access to tinted lenses. However, even assuming that the tinted lenses were a service, program, or activity of the prison, there are no facts from which to infer that Plaintiff did not receive this accommodation *because of his disability*. *See Bryant*, 83 F.3d at 249 ("[Plaintiff] was not treated worse because he was disabled. His complaint is that he was not given special accommodation."). Thus, neither the ADA nor the RA provide a remedy for Plaintiff's claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all claims against Defendants, other than the retaliation claim against Defendant Payne under § 1983, will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:   August 30, 2019          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE